[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-16245
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 29, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00134-CV-2

JOAQUIN TERRERO,

                                        Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA, et al.,

                                        Defendants,

WES LAMB,
DAVID FOX,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 29, 2008)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,* Circuit Judges.

_____

* Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

PER CURIAM:

This is a civil rights <u>Bivens</u> suit[1] for damages brought by a former inmate of

a federal low-security prison in Jesup, Georgia,[2] Joaquin Terrero, against the

prison's warden, D. L. Hobbs, and two of the prison's former chaplains, Wes

Lamb and David Fox.[3]  Terrero, a practicing Jew, claims that the defendants

infringed his rights under the First Amendment, the Fifth Amendment,[4] and the

Religious Freedom Restoration Act ("RFRA"),[5] because, on different occasions,

they failed to provide him with the means of celebrating the seven-day Jewish

festival of Sukkot[6] in October 2001, failed to ensure that he was served with

---

[1]  <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

[2]  Terrero was finishing up a 170-month sentence for possession with intent to distribute cocaine in the low security satellite of the Federal Correctional Institute-Jesup.

[3]  Also named as defendants were the United States of America and the National Inmate Appeals Coordinator (John Doe # 1) and the Regional Administrative Remedies Coordinator (John Doe # 2), both employees of the Federal Bureau of Prisons.

[4]  The complaint relies on the amendment's Equal Protection Clause.

[5]  RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless "[the government] demonstrates that application of the burden to the person (1) is in the furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a) and (b).  "[T]he term 'government' includes . . . [an] official . . . of the United States."  <u>Id.</u> at § 2000bb-2(1).

[6]  Sukkot is also known as the Feast of Tabernacles.  Sukkot celebrants erect and eat every meal in a sukkah, a temporary tent-like structure covered with branches.  Celebrants daily recite blessings over four plant species: a lulav (a palm branch); an etrog (a citron); a myrtle; and a willow.

challah bread instead of matzah crackers, and failed to contract with a rabbi to provide religious services. The chaplains moved the district court to dismiss Terrero's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that they are entitled to qualified immunity. The district court denied their motion, and they appeal.[7] We reverse.

## I.

Terrero's three-count complaint is significant in what it does and what it does not allege. We first consider what the complaint explicitly alleges, then consider what it does not allege.

### What the complaint alleges

Count One  On August 8, 2001 and again on September 17, 2001, Terrero wrote Lamb a letter asking that the prison furnish him with the following for the celebration of Sukkot: a sukkah; each of the four plant species; and permission to eat every meal in the sukkah. Terrero informed Lamb that if the prison was unable to furnish the items, the Aleph Institute of Miami, Florida, would do so. Terrero did not hear from Lamb in response, either verbally or in writing.

On October 1, Sukkot began without the items Terrero requested. On

---

[7] We have jurisdiction of this interlocutory appeal pursuant to 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S. Ct. 2806, 2815-16, 86 L. Ed. 2d 411 (1985).

October 6, Lamb had a sukkah built and authorized Terrero to eat lunch in it.  The

sukkah blew down the next day and Lamb gave the Jewish inmates exclusive

access to the chapel for Sukkot prayers.  Lamb denied Terrero's request for the

four plant species, citing budgetary constraints.

Count Two  Prior to January 2002, the prison had furnished the Jewish

inmates challah bread for Sabbath prayers.  In January 2002, the prison replaced

challah with matzah crackers.  Terrero asked Lamb and Fox to provide challah

instead of matzah, and that if the prison could not provide challah, "various Jewish

organizations" would provide it.  The chaplains denied his request, citing

"budgetary constraints."

Count Three  Terrero asked Lamb and Fox to contract with a rabbi to

provide religious services at the prison,[8] and that a rabbi was not provided.

Terrero exhausted his remedies with the Federal Bureau of Prisons ("BOP").

The remedies available to Terrero are spelled out in 28 C.F.R. § 542.10 et seq.

After presenting each issue of concern informally to staff, id. at § 542.13, Terrero

submitted a Request for Administrative Remedy to the Warden within 20 days of

the denial of his requests, id. at § 542.14.  The Warden investigated and responded

_____

[8] The complaint alleges that the prison provides clergy of all other religious sects either
as prison employees or by contract.

4

to each request.  Id. at § 542.11(a)(4).  If he was dissatisfied with the Warden's response, Terrero had 20 days to appeal, first to the BOP Regional Director, and then to the BOP General Counsel, id. at § 542.15, who each investigated his grievance and responded to his Requests for Administrative Remedy.  Id. at § 542.15.  These are the results of Terrero's Requests for Administrative Remedies.

Count One alleges that the "National and Administrative Remedy Coordinators upheld [Lamb's] denials, as did the Warden."  Concerning the sukkah, Count One alleges that the "government," in its "responses" to his request for administrative remedies, stated that it would change its policy and in the future provide a sukkah.

Count Two alleges that those handling the administrative review "refused to require [Lamb and Fox] to provide [challah bread]."

Count Three alleges that those handling the administrative review "refused to issue [a] contract" for a rabbi.

<u>What the complaint does not allege</u>

As to each count, the complaint does not allege what the chaplain(s) did after receiving Terrero's request for religious accommodation.  For example, Count One does not indicate (1) whether or not Lamb attempted to obtain the funds necessary to build the sukkah and the four plant species; (2) the date(s) he

5

sought his administrative remedies; (3) the evidence presented on administrative review by Terrero and Lamb; and (4) the reason why Lamb's decisions were upheld. For all we know, Lamb attempted to accommodate Terrero's requests but was presented from doing so by a superior within the BOP, by BOP regulations or policies, or the regulations or policies governing the operation of the Jesup prison.

Count Two likewise does not indicate what transpired during the various stages of administrative review. All we know is that challah was not provided due to "budgetary constraints." Who imposed those restraints and why is not alleged. Did the chaplains request the provision of challah? If so, to whom did they make their request, and what response did they receive?

Count Three does not indicate when Terrero asked the chaplains to contract with a rabbi, whether or not they attempted to secure the services of a rabbi, and what transpired during the various stages of administrative review.

## II.

Assuming for sake of argument that Terrero was denied religious accommodations at issue in violation of the First and Fifth Amendments and RFRA, the question the complaint does not answer is whether the chaplains or someone else caused the denial and whether the denial was lawful. Under the circumstances, we would be hard pressed to hold that the chaplains, in the exercise

6

of their discretion, infringed Terrero's rights. So to hold, we would have to say that merely alleging that Terrero asked the chaplains for the religious accommodations at issue and that the accommodation were not provided states a violation under the First or Fifth Amendments or RFRA. In other words, the fact that those participating in the administrative review of the chaplains' actions upheld them is of no moment.

We are not prepared to go that far. The chaplains are entitled to the dismissal of Terrero's allegations against them on the basis of qualified immunity because those allegations do not state the constitutional and statutory violations claimed.

The district court's order denying Lamb's and Fox's motions to dismiss is **REVERSED.**